JASPER E. JONES, Judge.
The plaintiff, City of Shreveport through the Board of Trustees of the Employees’ Retirement System, appeals a judgment rejecting its demand to recover benefits paid to an allegedly ineligible recipient and granting the reconventional demand of the recipient Bonnie Sue Trobaugh Young, defendant-reconvenor, to reinstate the benefits. We affirm.
The issue in this appeal is whether Ms. Young has remarried thereby terminating her right to receive benefits as the widow of William Young who was a City employee and member of the retirement system. This case arises from the facts set out below.
William Young died in 1977. Thereafter, Ms. Young began receiving benefits as his surviving spouse. Ms. Young was advised these benefits would terminate if she remarried.
In 1982 Ms. Young began a relationship with Juel Burling. He later moved into her home. This arrangement upset Ms. Young’s elderly mother and her daughter who disliked her children, Ms. Young’s grandchildren, being around such a living arrangement. Ms. Young was also concerned about the effect of the relationship upon her granddaughter (a child of her deceased daughter) who lived in the house with her.
In order to placate her mother, daughter, and avoid an appearance of impropriety to the live-in granddaughter, Ms. Young and Burling decided to go through a sham marriage ceremony. Ms. Young believed this ceremony would satisfy her mother and also deceive the grandchildren into believing there was a marriage. To this end the couple secured the services of a minister, Rev. James Byrd, to perform the service.
Prior to the ceremony both C.C. Haire, a friend of Ms. Young, and Bonnie Atwood, her daughter, were advised the ceremony was not real and the couple did not intend to become married. They were told the ceremony was for the satisfaction of Ms. Young’s mother and to cause the grandchildren to think she was married.
*1166 Rev. Byrd was not initially advised of the couple’s plan. He became aware of their intentions when he advised them the Texas license they had purchased would not be valid for a Louisiana marriage. They then advised him of their true intentions. Despite misgivings Rev. Byrd did not withdraw from the ceremony.
The ceremony was held in Ms. Young’s home on December 24, 1982. The ceremony was attended by approximately twenty-five people invited by Ms. Young’s mother. Ms. Young testified the ceremony did not include an exchange of rings or any statement of consent to be married. She also testified that Rev. Byrd did not pronounce them man and wife. Other witnesses who had observed the ceremony testified it did not appear to be a marriage ceremony.
Ms. Young and Burling lived together for about one year after the ceremony. During this time they filed a lawsuit in which they alleged they were husband and wife. They also acquired several motor vehicles whose titles named Ms. Young as “Bonnie Young Burling” and she was so named in at least one insurance policy.
In 1985 the City was advised that Ms. Young had remarried. The City terminated her benefits under the retirement plan and brought this action to recover benefits paid since the alleged remarriage. Ms. Young reconvened to have her benefits reinstated retroactive to the date of termination.
The trial judge found there had been no remarriage by Ms. Young because she and Burling had no intent to marry. He rendered the judgment complained of and this appeal followed.
The City contends the trial judge erred in ruling the evidence did not support a finding that Ms. Young had remarried.
The City’s first argument in support of this contention is that Ms. Young is es-topped to deny the marriage to Burling. The City bases this argument upon Lemon v. Richardson, Gunby’s Dec. 100 (La.App. 2d Cir.1885). Lemon concerns the validity of a marriage contracted during slavery. The court found the marriage valid. Therefore, its remarks upon the subject of estoppel are dicta and not binding upon us.
An essential element in the application of equitable estoppel is a detrimental reliance by the party asserting the estoppel. City of Bossier City v. Usery, 356 So.2d 1099 (La.App. 2d Cir.1978); Cudahy Foods v. Rich Plan of Baton Rouge, 349 So.2d 894 (La.App. 1st Cir.1977), writ refused, 351 So.2d 172 (La.1977). Here there is no detrimental reliance by the City.
Ms. Young was entitled to receive benefits based on her status as the widow of a member of the retirement system. Now the City has changed its position to its benefit, by terminating Ms. Young’s bené-fits, based on the alleged remarriage. Under these circumstances there is no detrimental reliance by the City and the doctrine of equitable estoppel is inapplicable to this case.
The City also argues that the evidence of the actions of the couple shows that they intended to be married. The City points to their statement in a verified petition in another matter that they were married as well as their purchase of a marriage license and the issuance of several documents, such as motor vehicle title and insurance policies, showing Ms. Young’s name as “Bonnie Young, Burling.”
Free consent of the parties is essential to the marriage. C.C. Arts. 90, 91 (repealed 1988). See C.C. Art. 87. The trial judge's finding that there was no intent to marry is no more than a finding that Ms. Young and Burling did not consent to marriage. Because this is a factual finding it is not to be disturbed on appeal unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
The testimony of every witness who appeared at trial supports the trial court’s finding. The evidence shows Ms. Young and Burling both told others, both before and after the ceremony, that they were not marrying but only going through the service to placate Ms. Young’s mother and to mislead her grandchildren.
The marriage license was not introduced in evidence. Rev. James Byrd, who performed the ceremony, testified that at its conclusion he signed the marriage license *1167 and left it on the table in Ms. Young’s home. He stated that he did not secure the signature of Ms. Young or Burling upon the license and did not return the license to the Clerk of Court in Texas from which it had been acquired as was his custom at the conclusion of marriage ceremonies. There was no evidence that Ms. Young or Burling signed the license. Ms. Young testified the license was never returned to the issuing office in Texas and she destroyed them.
There are copies of Ms. Young’s 1982, 1983, 1984 and 1985 U.S. income tax returns in the record filed in answer to a request for documents and none of them reflect Ms. Young as married. All of these returns were filed by her as head of the household and all show her name as Bonnie Young with the exception of her 1983 copy which does not reflect her name.
There is no error in the trial judge’s resolution of the conflicting evidence on this point. The testimony of the witnesses is very substantial evidence supporting his finding that Ms. Young and Burling did not intend to marry. The copies of Ms. Young’s tax returns also reflect that she did not intend to be married. The fact that Ms. Young and Burling did not sign the marriage license nor was it returned to the issuing Texas clerk is further substantial evidence that Ms. Young did not intend to marry.
The City’s assignment of error is without merit. The judgment of the district court is affirmed at appellant’s costs.